**DUNKIN' DONUTS and Third Dunkin' Donuts,**

v.

**SHREE DEV DONUT LLC, Vasudev Patel and Kokilaben Patel.**

No. CIV. A. 99–6655.

United States District Court, E.D. Pennsylvania.

April 13, 2001.

Robert L. Zisk, Thomas M. Finan, Eric L. Yaffe, Rebecca A. Hirselj, Schmeltzer, Aptaker & Shepard, Washington, DC, John J. Jacko, III, Buchanan, Ingersoll, Philadelphia, PA, for Plaintiffs.

Joseph M. Profy, Reed, Smith, Shaw & McClay, Philadelphia, PA, for Defendants.

### MEMORANDUM AND ORDER

YOHN, District Judge.

Plaintiffs brought this action seeking to terminate the defendants' contractual

rights under the franchise agreements (and sub-lease) between the parties and to enjoin the defendants from continuing to operate the Dunkin' Donuts shop located in Media, Pennsylvania.

■ Plaintiffs' complaint is based on an incident in Pittsburgh when defendant Vasuda Patel handed to a Dunkin' Donuts employee an envelope containing three $100 bills with the words "Happy Birthday" written on the envelope. There was no card in the envelope. Patel and the employee were discussing Patel's proposed purchase of two additional Dunkin' Donuts shops located in the Pittsburgh area. Plaintiffs would have to approve the purchase of those shops. Plaintiffs interpret the $300 as an attempt to bribe the employee. Defendants interpret the incident as a birthday gift. This is clearly a factual question for the jury to decide.

■ The relevant portion of the franchise agreement states that defendants agree to "comply promptly *with all applicable laws,* rules, regulations, ordinances and orders of public authorities including, but not limited to, the Board of Fire Underwriter and other similar organizations and all governmental agencies, however designated, which address health, safety, sanitation, environmental or other issues affecting operation of the Dunkin' Donuts shop." (emphasis added). Both parties contend that the plain language of this provision supports their position. Because both parties offer a reasonable interpretation of the provision, the provision is ambiguous. The phrase "all applicable laws" requires an interpretation as to which laws apply and which laws do not and whether the facts in dispute constitute a violation of the applicable law. A determination by the court that a given term in a contract is ambiguous makes the interpretation of that term a question of fact for the trier of fact to resolve in light of the extrinsic

evidence offered by the parties in support of their respective interpretations. Summary judgment on Counts I and II will, therefore, be denied on this claim.

The franchise agreements also provide that the defendants agree not to "do or perform, directly or indirectly, any *other act injurious or prejudicial to the goodwill* associated with Dunkin' Donuts proprietary marks and the Dunkin' Donuts system." (emphasis added).

■ Normally, goodwill relates to associations made by consumers or the general public with the company. Every witness from Dunkin' Donuts testified that they personally did not discuss the incident with anyone outside of fellow Dunkin' Donuts employees or Dunkin' Donuts legal counsel. Plaintiffs have produced no evidence that there is a possibility that a consumer or some other member of the public will associate Patel's actions with Dunkin' Donuts. In fact, plaintiffs have not produced any evidence that anyone other than Dunkin' Donuts employees is aware of the incident involving Patel. Thus, plaintiffs have offered no proof that either the general public, Dunkin' Donuts customers or any Dunkin' Donuts franchisee was aware of Patel's alleged act so that it is not possible for any of the members of those groups to associate Patel's actions with Dunkin' Donuts.

Plaintiffs contend that there is no necessity to show that some member of the public was aware of the attempted bribe, if it was such, in order to invoke the "goodwill clause." However all of the cases cited by the plaintiffs seem to be cases where the criminal conduct of the defendant had become known to the public. Therefore, I will grant the motion for summary judgment as to the "goodwill clause" but give the plaintiffs an opportunity to submit additional authority within ten days

of the date hereof, which might establish a violation of the "goodwill clause" where only the alleged perpetrator and the employees of the alleged victim were aware of the act in question.[1]

■ Defendants have filed a counterclaim alleging that the plaintiffs terminated their Media franchise agreements for pretextual reasons—essentially because Dunkin' Donuts wanted to acquire the Pittsburgh stores for less than what the defendants were willing to pay, and then resell those Pittsburgh stores for a profit. Defendants contend that this is not only a violation of the franchise agreements, but also a violation of the implied covenant of good faith and fair dealing which applies to the franchise agreements because they are to be interpreted, construed and governed by the laws of the Commonwealth of Massachusetts.

Plaintiffs contend that summary judgment should be entered in their favor on Counts I and II of the counterclaim because if the defendants win on the issues in Counts I and II of the complaint, plaintiffs have agreed that the termination of the franchise agreements would be invalid and defendants will have suffered no damages because they have been allowed to continue operating the Media store.

Defendants contend that they have produced sufficient evidence for a jury to rule on their favor on these claims. If the plaintiffs are unsuccessful in their claims that defendants breached the franchise agreements because of the alleged bribe, the defendants might very well still be successful in their counterclaims for breach of contract and declaratory judgment. Although defendants have articulated no particular benefit they would achieve from such a victory, other than nominal damages, I will permit them to proceed on these claims at this stage of the litigation.

■ In Count III of defendants' counterclaim, they allege tortious interference with contractual relations, business relations, business advantage and prospective contractual relations. Defendants contend that plaintiffs fabricated a reason (the $300.00 gift alleged to be a bribe) in order to justify a refusal to approve the transfer of the Pittsburgh stores to Patel. Defendants further contend that plaintiffs' true motivation was to reap a $750,000 financial windfall by preventing the transfer of the Pittsburgh stores to Patel so that plaintiffs could obtain the stores for no consideration and be free to sell those stores to another franchisee. The parties agree that since the tortious interference claim relates to the attempt by the defendants to purchase the Pittsburgh stores, rather than the franchise agreements, Pennsylvania law applies to this claim.

Plaintiffs contend that they cannot be liable for tortuous interference with the Pittsburgh contracts because sections 10.1 and 10.2 of the franchise agreements provide that any sale must have the prior written consent of Dunkin' Donuts. However, the franchise agreements also provide that the consent shall not be unreasonably withheld. If the approval would be withheld for the reasons alleged by the defendants, a reasonable jury could conclude that the approval was unreasonably withheld for an improper reason resulting in interference with defendants' contractual and prospective contractual relations with another. There are genuine issues of material fact and plaintiffs are not entitled to judgment as a matter of law. Plaintiffs'

---

1. Since summary judgment has been denied as to Counts 1 and 2 of plaintiffs' complaint relating to a breach of the franchise agreements, Counts 3,4 and 5 will also remain.

motion for summary judgment will be denied on this claim.

Finally, defendants submit a claim for slander, libel and defamation because Patel was labeled "a criminal" and his Dunkin' Donuts store in Media was categorized as a "sub-par C store".

Defendants have produced no evidence that Dunkin' Donuts labeled Patel as a "criminal".

Defendants contend that in September, 1999, the defendants' business consultant was changed to Teague Higgins who dealt exclusively with "C-rated" stores, that is, troubled stores, and that this is common knowledge to all Dunkin' Donuts franchisees in the Philadelphia area. On October 1, 1999, a list of all Philadelphia market franchisees and their business consultants was distributed to all Philadelphia area Dunkin' Donuts franchisees.

Plaintiffs have submitted evidence that the Media store was never downgraded to a "C" rating. In addition, Higgins testified in his deposition that the actual number of "B" rated stores under his review when the October 1, 1999 list was generated was 10 and the number of "C" rated stores was 17. Defendants have submitted no contrary evidence.

Moreover, any possible statement that the defendants' stores were "sub-par C stores" is not capable of a defamatory meaning. There being no genuine issues as to any material fact with reference to this claim, the plaintiffs are entitled to judgment as a matter of law and summary judgment will be entered in favor of the plaintiffs on this claim.

### ORDER

AND NOW, this day of April, 2001 upon consideration of plaintiffs' renewed motion for summary judgment and defendants' motion for summary judgment and the related papers thereto, IT IS HEREBY ORDERED that:

1. Judgment is entered in favor of the defendants and against the plaintiffs on the claim in Counts I and II of the complaint relating to the "goodwill clause" only.

2. Judgment is entered in favor of the plaintiffs (counterclaim-defendants) and against the defendants (counterclaim-plaintiffs) on Count IV of the counterclaim alleging slander, libel and defamation.

3. Plaintiffs' renewed motion for summary judgment and defendants' motion for summary judgment are DENIED in all other respects.